# COMMISSIONER OF SECURITIES & INSURANCE

**MONICA J. LINDEEN**
**COMMISSIONER**



**OFFICE OF THE MONTANA**
**STATE AUDITOR**

APR 2 2 2016

April 21, 2016

CORP LAW DEPT

APR 2 2 2016

CERTIFIED RETURN RECEIPT MAIL

Office of the General Counsel
Transamerica Premier Life Insurance Company
4333 Edgewood Road NE, Mailstop #3510
Cedar Rapids, IA  52499

Dear General Counsel:

Attached are a *Summons, Complaint & Jury Demand,* and *Plaintiffs' First Set of Discovery Requests to All Defendants* in the case of:

WILLIAM DUN, Individually and as the PERSONAL
REPRESENTATIVE OF THE ESTATE OF DUN, IRENE
DUN, SHERYL DUN, PAT RUGGIERI, and DORA MENGEL

Plaintiffs,

v

TRANSAMERICA PERMIER LIFE INSURANCE COMPANY,
f/k/a MONUMENTAL LIFE INSURANCE COMPANY, f/k/a
PEOPLES BENEFIT LIFE INSURANCE COMPANY, and
DOES I-V

Defendants,

originating in the District Court of the Eighteenth Judicial District of the State of Montana, in and for the county of Gallatin.

Service of process was made April 19, 2016, upon the Commissioner of Securities and Insurance, Montana State Auditor, in conformity with the provisions of the Montana Code.  Please contact Darla Sautter at (406) 444-2726 with any questions.

Sincerely,

JESSE LASLOVICH
Chief Legal Counsel

JL/ds
Enclosures

cc:    Daniel P. Buckley
       Daniel B. Bidegaray
       Attorneys for Plaintiff



Daniel P. Buckley
BUCKLEY LAW OFFICE, P.C.
125 W. Mendenhall St., Ste. 201
Bozeman, MT 59715
Ph:  (406) 587-3346
Fax: (406) 585-7654
Dbuckley@Danbuckleylaw.com

Daniel B. Bidegaray
BIDEGARAY LAW FIRM, LLC
2042 Stadium Dr., Suite 1
Bozeman, MT 59715
Ph:  (406) 522-7744
Fax: (406) 522-8244
Daniel@Bidegaraylawfirm.com
*Attorneys for Plaintiffs*

## MONTANA EIGHTEENTH JUDICIAL DISTRICT COURT, GALLATIN COUNTY

| | |
|---|---|
| WILLIAM DUN, Individually and as the PERSONAL REPRESENTATIVE OF THE ESTATE OF IRMADEL DUN, IRENE DUN, SHERYL DUN, PAT RUGGIERI, and DORA MENGEL,<br><br>              Plaintiffs,<br>     v.<br><br>TRANSAMERICA PREMIER LIFE INSURANCE COMPANY, F/K/A MONUMENTAL LIFE INSURANCE COMPANY, F/K/A PEOPLES BENEFIT LIFE INSURANCE COMPANY, AND DOES I – V,<br>              Defendant. | Cause No. _DV-15 - 982 B_<br><br><br>**SUMMONS** |

**TO: Transamerica Premier Life Insurance Company, F/K/A Monumental Life Insurance Company, F/K/A Peoples Benefit Life Insurance Company, and Does I – V.**

You are hereby summoned to answer the Complaint in this action, which is filed in the

office of the Clerk of this Court, a copy of which is herewith served upon you, and to file your

answer and serve a copy thereof upon the Plaintiffs' attorneys, within twenty-one (21) days after

the service of this Summons, exclusive of the day of service; and in case of your failure to

appear or answer, judgment will be taken against you by default for the relief demanded in the

Complaint.

WITNESS my hand and seal of said Court this __11ᵗʰ__ day of December, 2015.

Jennifer Brandon, Clerk of Court

By:_____Barbara N Hanosek_____
DEPUTY CLERK

Daniel P. Buckley
Buckley Law Office, P.C.
125 West Mendenhall
Bozeman, Montana 59715
Ph:  (406) 587-3346
Fax: (406) 585-7654
dbuckley@danbuckleylaw.com

Daniel B. Bidegaray
BIDEGARAY LAW FIRM, LLC
2042 Stadium Dr., Suite 1
Bozeman, MT 59715
Ph:  (406) 522-7744
Fax: (406) 522-8244
Daniel@Bidegaraylawfirm.com
*Attorneys for Plaintiffs*

GALLATIN COUNTY CLERK
OF DISTRICT COURT
JENNIFER BRANDON

2015 DEC 11  PM 4 48

FILED

BY _____

DEPUTY

COPY

**MONTANA EIGHTEENTH JUDICIAL DISTRICT COURT, GALLATIN COUNTY**

WILLIAM DUN, Individually and as the
PERSONAL REPRESENTATIVE OF THE
ESTATE OF IRMADEL DUN, IRENE DUN,
SHERYL DUN, PAT RUGGIERI, and DORA
MENGEL,

          Plaintiffs,

    v.

TRANSAMERICA PREMIER LIFE
INSURANCE COMPANY,
F/K/A MONUMENTAL LIFE INSURANCE
COMPANY, F/K/A PEOPLES BENEFIT LIFE
INSURANCE COMPANY, AND DOES I – V,

          Defendants.

Cause No.  DV-15 - 982 B

**COMPLAINT AND JURY DEMAND**

Plaintiffs, through counsel, bring this complaint and state:

1. Before November 7, 2003, Defendant, through an alleged direct mail solicitation, invited Ms. Irmadel Dun, a 70-year-old widow, to become insured with a $100,000 "Accidental Death coverage." See Exhibit A.  Ms. Dun signed the enrollment insurance form on November 7, 2003, and faithfully paid premiums to Defendant through the time of her accidental death, on March 15, 2013.

2.  At the time of Defendant's sale of this life insurance, Ms. Dun was a resident of Gallatin County, Montana.  She maintained her Gallatin County, Montana residence through the time of her death and her Estate is pending in Gallatin County.

3.  Plaintiffs, William Dun, Irene Dun, Sheryl Dun, Pat Ruggieri, and Dora Mengel are the surviving children of Ms. Dun and the contractual beneficiaries of this insurance.

4.  This accidental death insurance was sold to Ms. Dun by Peoples Benefit Life (the predecessor to Transamerica Premier Life Insurance Company).  See Exhibit A.

5.  Defendant Transamerica Premier Life Insurance Company, F/K/A Monumental Life Insurance Company (which merged with Peoples Benefit Life Insurance Company), is a foreign corporation that conducted and conducts insurance business in Montana. Defendant through its agents, predecessors, and/or prior business entities sold this and other policies of insurance to Ms. Dun, starting in the early 1990s.

6.  Effective July 1, 1995, National Home Life Assurance Company changed its name to Providian Life and Health Insurance Company. Effective October 1, 1998, Providian Life and Health Insurance Company changed its name to Peoples Benefit Life Insurance Company. Effective October 1, 2007, Peoples Benefit Life Insurance Company merged into Monumental Life Insurance Company. Effective July 31, 2014, Monumental Life Insurance Company changed its name to Transamerica Premier Life Insurance Company.

7.  The true names or capacities, whether individual, corporate, associated, or otherwise, of Defendant and DOES I through V, inclusive, are unknown to Plaintiffs. Therefore, Plaintiffs sue Defendant and DOES I through V by using these fictitious names. Plaintiffs allege that each of the Defendants sued as a DOE is potentially legally responsible in some manner for the events and happenings referred to herein, and will ask leave of this

Court to amend this complaint to insert their true names and capacities in place of the fictitious names when and if the same become known to Plaintiffs.

8. After Ms. Dun's accidental death, Plaintiffs, the contractual beneficiaries, made a claim with Defendant for the $100,000 accidental death benefit.

9. Defendant unreasonably denied the claim on December 13, 2013. Defendant had no reasonable basis in law or fact to deny this claim.

10. Defendant cited to a "Certificate" it alleges it delivered to Ms. Dun.

11. There is no evidence that Defendant delivered the policy to Ms. Dun.

12. Plaintiffs requested Defendant produce the original Certificate, and/or proof of mailing the original Certificate to Ms. Dun. Defendants responded that it cannot do so because it no longer has such documentation.

13. Instead, Defendant now relies upon a "specimen copy" of the purported certificate/policy. See attached Exhibit B.

14. The "specimen certificate" is titled, "GROUP ACCIDENTAL DEATH INSURANCE CERTIFICATE".

15. This title follows the language in the enrollment form that Defendant mailed to Ms. Dun. The enrollment form, states, "Yes, I want $100,000 of this Accidental Death coverage."

16. The first sentence of the policy/certificate also follows the language of the enrollment form. The first sentence of this insurance unambiguously provides insurance coverage for accidental deaths. It reads, "This insurance Certificate pays benefits for death due to an accident."

17. Defendant does not define "accident" in the specimen policy/certificate.

18. An insurance policy that does not define the term "accident" is ambiguous as a matter of law. *Wendell v. State Farm Mut. Auto. Ins. Co.*, 974 P. 2d 623, ¶ 29 (Mont. 1999). Any ambiguity in an insurance policy must be construed in favor of the insured, and in favor of extending coverage. *Id.* at ¶ 14.

19. Even though Ms. Dun's death resulted from an accident, Defendant refuses to pay the $100,000 death benefit, claiming it will "only" pay death benefits that result from a motor vehicle or common carrier hazard.

20. Ms. Dun was 79 years old at the time of her death. Her death was caused by a fall and related complications.

21. Defendant relies on language found on page three of the specimen policy/certificate, which reads:

### PART III: ACCIDENTAL DEATH BENEFIT

We pay a benefit if an Insured dies as the result of an Injury that occurs from one of the Accident Hazards described below. The Accidental Death Benefit is shown on your Certificate Schedule. Death must occur within 90 days (180 days if this Certificate is issued in New Mexico) of the accident causing the Injury.

**Motor Vehicle Hazard:** This Hazard occurs if an Insured dies as a result of being Injured:

      a. while riding in or driving a Private Passenger Automobile;

      b. if struck, as a pedestrian, by a Private Passenger Automobile or any other Land Motor Vehicle; or

      c. while driving for hire a Land Motor Vehicle.

**Common Carrier Hazard:** This Hazard occurs if an Insured dies as a result of being Injured while:

      a. riding as a fare paying passenger on a Common Carrier; or

      b. getting on or off a Common Carrier.

22. The term "only" that Defendant now utilizes in its denial letter, should not be read into Part III because it is not contained in Part III. Further, "only" should not be read into Part III because such a limitation would improperly conflict with the enrollment form and the first page of the specimen policy/certificate (assuming the limiting language in the policy/certificate applies to the issue of coverage here, which Plaintiffs challenge).

23. Plaintiffs are not aware of any "group" that Ms. Dun was a member of that subjected her to this direct mail solicitation.

24. After receiving the "specimen certificate"/policy, Plaintiffs asked Defendant questions about the specimen certificate. Defendant could not identify what "group" Ms. Dun was allegedly a member, it could not identify the Plan Administrator or certificate holder, nor could it provide proof this alleged Group Accidental Death Insurance "specimen certificate" was ever sent to Ms. Dun.

25. Contrary to law, Plaintiffs do not believe Defendant delivered a copy of the "specimen certificate" or even a "summary form" to Ms. Dun. See Mont. Code Ann. §§ 33-15-212, 33-21-204, 33-22-502.

26. Defendant cannot establish or prove with competent evidence the purported policy/certificate was delivered to Ms. Dun.

27. Because Ms. Dun died an accidental death, Defendant owes Plaintiffs the $100,000 in accidental death benefits that Ms. Dunn faithfully paid Defendant for.

28. If the "certificate" or policy was not delivered to Ms. Dun, then Defendant cannot rely on Part III.

29. An insurer cannot rely on policy language not delivered to an insured to support denial of a claim.

30. Alternatively, even if Defendant meets the burden of proving delivery of the "certificate" or policy to Ms. Dun, Defendant still owes the $100,000 accidental death benefit.

31. It is the rule of construction in Montana that language of limitation or exclusion must be clear and unequivocal, and unambiguous; otherwise, the policy will be strictly construed in favor of the insured. Further, lack of clarity and/or ambiguities in policies/certificates

are strictly construed against the insurer and in favor of coverage, as should be done in this case.

32. The "specimen certificate"/policy does not clearly and unequivocally limit or exclude the accidental death benefit.

33. It is deceptive, misleading and/or illegal for an insurer to misrepresent the name or title of an insurance policy or class of insurance policies from the true nature of the policy.

34. It is deceptive, misleading and/or illegal for an insurer to misrepresent the benefits, advantages, conditions, or terms of an insurance policy.

35. The law does not allow an insurer to hold out expectations of coverage with one hand and then take coverage away with the other by setting forth a promise in one part of the insurance contract and then taking it away somewhere else. An insurer may not avoid liability by utilizing such tactics.

36. Here, the enrollment form, the title of the policy and the first sentence of the specimen certificate clearly and unequivocally extends coverage for accidental deaths. Only on page three does Defendant find language to try to limit such coverage. This attempted bait and switch is deceptive and misleading.

37. The enrollment form and the first page of this insurance which extends coverage for accidental death are not consistent with Defendant's position that death benefits are not actually available. Defendant's position is misleading and violates the reasonable expectations of the insured. *Hardy v. Progressive Specialty Insurance Co.*, 67 P. 3d 892. ¶ 23 (Mont. 2003).

38. Further, Part III of this policy does not unequivocally limit the insuring language in the first sentence of the specimen policy, which states, "This insurance Certificate pays benefits for death due to an accident."

39. Coverage for this accidental death benefit should also be enforced under the theories of: reformation, promissory estoppel, equitable estoppel, inducement, deceit, fraud[1], constructive fraud, and similar legal theories.

40. Ms. Dunn was sold insurance by Defendant in reliance of the terms in the enrollment form, which did not contain the terms Defendant now seeks to impose and enforce; and even assuming arguendo that Ms. Dun received the certificate/policy, the 1st page clearly and unequivocally provides coverage for accidental death benefits.

41. Accidental death insurance has been referred to as "Las Vegas coverage" because the chances of receiving death benefits are so remote.

42. Loss ratios for accidental death coverage are low.

43. Defendant did not relay the true loss ratio associated with this accidental death coverage.

44. Here, Defendant is now attempting to lessen the probability of having to pay accidental death coverage by limiting it to "only" those deaths caused by a motor vehicle or common carrier hazard.

---

[1]       To the extent that Plaintiffs are required to prove the 9 elements of fraud, which Plaintiffs do not believe is required, Plaintiffs plead: (1) a representation was made by Defendants (i.e., accidental death benefits is actually something much more limited under Defendants arguments); (2) the representation was false; (3) the representation was material; (4) Defendants had knowledge of the representation's falsity or ignorance of its truth; (5) the Defendants intended representation should be acted upon by Ms. Dun and in the manner reasonably contemplated by Defendants; (6) Ms. Dun was ignorant of the representation's falsity; (7) Ms. Dun relied upon the truth of the representation (i.e., believing she was purchasing accidental death coverage without the limitations Defendants seek to impose); (8) Ms. Dun had the right to rely upon the representation; and (9) Plaintiffs have suffered consequent and proximate injury or damages caused by their reliance on the representation.  See *Morrow v. Bank of Am., N.A.*, 2014 MT 117, ¶ 57, 375 Mont. 38, 55, 324 P.3d 1167, 1182

45. But Defendant takes this bait and switch further, by limiting the definition of "private passenger automobile" found in a different part of the policy. Defendants exclude pickups "with a factory rating load capacity greater than 1,500 pounds." So, even if Ms. Dun would have died while riding in a ¾ ton pickup, Defendant would deny coverage.

46. Defendant's improper attempt to improve its odds of not having to pay a death benefit should be rejected as a matter of law.

47. It is believed Defendant has engaged in a pattern and practice of illicit and invalid sales of insurance, claim handling rules, practices and/or policies, all to increase profits at the expense of legitimate claims made by deserving people such as Ms. Dun.

48. Defendants' conduct violates bad faith laws, or claims handling rules, practices and/or policies and is a breach of the insurance policy.

49. Defendants have neglected to attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

50. Defendant's position that no accidental death benefits are owed misrepresents pertinent facts or insurance policy provisions relating to coverages at issue.

51. Assuming Defendant's interpretation of the policy is correct, Defendant's enrollment form and the first page of the policy misrepresent pertinent facts or insurance policy provisions relating to coverages at issue.

52. Because of the unreasonable denial of benefits, Defendants have withheld benefits owed, causing Plaintiffs out-of-pocket expenses, loss of use of money, emotional distress, wasted time and other harms.

53. Defendant has acted with actual malice and/or actual fraud as defined by MCA § 27-1-221, making punitive damages appropriate to deter this type of conduct from occurring in this case and in others.

54. Defendants have violated the Montana Unfair Trade Practices and Consumer Protection Act. Plaintiffs seek all recoverable damages against Defendants for violating this Act.

55. Plaintiffs, under the Montana Declaratory Judgments Act, seek declaratory judgment in Plaintiffs' favor that the policy was in full force and effect at the time of Ms. Dun's accidental death and that the full death benefits are due and owing, plus interest, attorney fees and costs.

### PRAYER FOR RELIEF

Plaintiffs demand judgment from Defendants for all damages allowed by law, costs of suit, and for all other relief to which Plaintiffs may be entitled, including but not limited to: all recoverable special and general damages, including but not limited to all economic and non-economic damages, attorney's fees and punitive damages; treble damages; all allowable interest; all recoverable costs; and such other relief as may be just and equitable.

SUBMITTED this _10th_ day of December 2015.

BIDEGARAY LAW FIRM, LLC

DANIEL B. BIDEGARAY
*Attorney for Plaintiffs*

Plaintiff demands a jury on all issues triable to a jury.

SUBMITTED this _10th_ day of December 2015.

BIDEGARAY LAW FIRM, LLC

DANIEL B. BIDEGARAY
*Attorney for Plaintiffs*

# EXHIBIT A

Peoples Benefit Life Insurance Company • Valley Forge, PA, 19493

C#20031HXKJQH0 0001
0#00D0-RT0U
PWHLSG

**YOUR NAME:**
Irmadel Dun
C/o Apt 309
Leg Villa 1215 W Durston
Bozeman MT 59715

**CERTIFICATE NUMBER:** AC07096
**FIRST PREMIUM:** $4.33 monthly

**YOUR BENEFICIARY:**_____

11 11-3008

Yes, I want $100,000 of this Accidental Death coverage.

I understand that no coverage is in effect until a Certificate is issued and my first premium is paid when due and during my lifetime. I also understand that only accidental bodily injuries sustained on or after my Certificate Effective Date will be covered. I understand that subject to the company's maximum coverage limit, I can have more than one policy/certificate providing the same or similar coverage. I have read my state's fraud notice on the back of this enrollment form.

SIGN HERE: X _Irmadel M. Dun_            DATE: _11/7/03_

NHGA-ADB-0801                         MPG2633/                          NHC-3260-0801

B0009172   PN 07/02        H3IA1696      HAP677

# EXHIBIT B

# Peoples Benefit Life Insurance Company

**AN IOWA STOCK COMPANY • ADMINISTRATIVE OFFICES: VALLEY FORGE, PENNSYLVANIA 19493**
**1-800-523-7900**

## GROUP ACCIDENTAL DEATH INSURANCE CERTIFICATE

This insurance Certificate pays benefits for death due to an accident. In this Certificate, Peoples Benefit Life Insurance Company is referred to as "we," "our," or "us." The Principal Insured is "you," "your," or "yours." This Certificate explains your coverage under the Group Policy. The Group Policy is a legal contract. You rely on us to honor its terms. We depend on your payment of premiums when due.

The Group Policy Number and the name of the Policyholder are shown in the Certificate Schedule. The Policy may be inspected during business hours at the office of the Policyholder.

### CERTIFICATE SCHEDULE

INSUREDS:

PLAN SPECIFICATIONS:

CERTIFICATEHOLDER: ####################

INSURED DEPENDENTS: ####################

CERTIFICATE EFFECTIVE DATE: ##########
CERTIFICATE NUMBER: ####################
RENEWAL PREMIUM: ##########        INITIAL PREMIUM: ##########        INITIAL TERM: ##########
                 __Monthly    Quarterly    Semi-Annually    Annually
GROUP POLICYHOLDER: ####################
GROUP POLICY NUMBER: ##########

*SPECIMEN*

### TABLE OF CONTENTS

| | Page | | | Page |
|---|---|---|---|---|
| Certificate Schedule | 1 | Definitions | | 2 |
| Right to Examine Certificate | 1 | Exclusions | | 3 |
| Individuals Eligible for Insurance | 2 | Beneficiary | | 3 |
| When Coverage Starts | 2 | When There is a Claim | | 3 |
| When Coverage Stops | 2 | General Provisions | | 4 |
| Accidental Death Benefit | 2 | Premiums | | 4 |

**GUARANTEED RENEWABLE:** We guarantee to renew this Certificate until you reach Age 80, subject to the timely payment of premiums when due.

**RIGHT TO EXAMINE CERTIFICATE:** If for any reason you are not satisfied with your Certificate, you may return it to us within 30 days of: (a) the date you receive the Certificate; or if later, (b) the date the first premium is paid. We will refund any premiums paid. The Certificate is treated as if it never existed. No benefits are paid.

**IN WITNESS,** this Certificate is signed by our President and Secretary.

Craig D. Vermie
Secretary

Marilyn Carp
President

**THIS COVERAGE IS LIMITED TO ACCIDENTS AND DOES NOT PAY FOR DEATH DUE TO SICKNESS**
**COVERAGE STOPS AT AGE 80**

NHC-3260-0801

# PART I: DEFINITIONS

When used in this Certificate:

a) **"Age"** means, on the Effective Date, your current age based on your last birthday. Your age on the Effective Date will increase by one year on each Certificate Anniversary. Your age increase for purposes of this Certificate will always occur on the Certificate Anniversary, even if your actual birthday occurs (in most cases) during the Certificate Year prior to the Certificate Anniversary.

b) **"Beneficiary"** means the person who receives the payment of benefits. This is explained in Part V.

c) **"Certificate Anniversary"** means any anniversary of the date this Certificate takes effect.

d) **"Certificate Year"** means the 12 month period ending on any Certificate Anniversary.

e) **"Common Carrier"** means any land, water or air conveyance operated under common carrier license for the transport of passengers for hire. A school bus is also considered a Common Carrier.

f) **"Covered Dependent Spouse"** means your lawful spouse who is insured under this Certificate.

g) **"Injury"** means an injury to an Insured's body, caused by an accident, directly and independently of all other causes. It must occur while an Insured's coverage is in force.

h) **"Insured"** means the Principal Insured or any Covered Dependent Spouse who is insured under this Certificate.

i) **"Land Motor Vehicle"** means any vehicle designed for use on a public street or highway. However, this does not include: (1) a farm type tractor or any equipment designed for use principally off public roads; or (2) any vehicle operated on rails (e.g., a trolley) or crawler treads.

j) **"Mental Disease or Disorder"** means neurosis, psychoneurosis, psychopathy, psychosis, or mental or emotional disease or disorder which does not have a demonstrable organic cause.

k) **"Principal Insured"** means only the person who enrolled for coverage and who is named as the Certificateholder on the Certificate Schedule.

l) **"Private Passenger Automobile"** means a car, jeep, van, or truck that is not licensed to transport passengers for hire. A truck with a factory rating load capacity greater than 1,500 pounds is not a Private Passenger Automobile.

m) **"Written Notice"** means a request or notice in writing by an Insured to us.

# PART II: WHEN COVERAGE STARTS AND STOPS

## A. INDIVIDUALS ELIGIBLE FOR INSURANCE

**ELIGIBLE MEMBERS:** All members of the Group Policyholder as set forth in the Group Policy are eligible to enroll for coverage.

**ELIGIBLE DEPENDENT SPOUSE:** Each Eligible Member may insure his spouse on the later of: (1) the Effective Date of his Certificate; or (2) the date he first acquires a spouse (see ADDING A SPOUSE).

## B. WHEN COVERAGE STARTS

Before coverage becomes effective, you must: (1) enroll; and (2) pay the required premium. Coverage will then start at 12:01 A.M., Standard Time, at your home on the date shown on your Certificate Schedule. If no premium is required when you enroll, you have 21 days from the Effective Date of the Certificate to pay the first premium. If you fail to do so, your Certificate will be deemed void from the beginning. No benefits will be paid for any loss. NOTE: Part VIII: PREMIUMS, explains various billing methods that you can choose.

**ADDING A SPOUSE:** In order to cover a spouse not insured on the Effective Date, you must: (1) make written request to us; and (2) pay any required additional premium. The Effective Date of coverage for such spouse is the date shown on our endorsement indicating such addition.

## C. WHEN COVERAGE STOPS

Coverage under this Certificate stops at 12:01 A.M., Standard Time, at your home on the earliest of:

1) the date you reach Age 80;
2) the date the 31 day grace period ends if you fail to pay the premium when due (NOTE: If payment is made by credit card or automated account deductions, you must notify us in writing to cancel this insurance. See the "Premiums" provision); or
3) the date we receive your written request to cancel. (Note concerning cancellation: The provision entitled "Right to Examine Certificate" explains the rules for cancellation when your coverage is first issued. After that period the Cancellation provision on Page 4 applies.)

A Covered Dependent Spouse's coverage stops on the premium due date after a change in marital status. If this happens, the Covered Dependent Spouse may apply for a Certificate with similar benefits. We do not require proof of good health. We must receive a written request within 60 days of the change in marital status. The spouse then pays the premium for a single adult at his age.

## D. PRINCIPAL INSURED'S DEATH:

If you die, your Covered Dependent Spouse, if any, becomes the Principal Insured. His premium rate will be that of a Principal Insured based on his age at the time this Certificate was issued. However, if your Covered Dependent Spouse is age 80 or older on the date you die, such spouse will not become the Principal Insured. All coverage will stop.

## PART III: ACCIDENTAL DEATH BENEFIT

We pay a benefit if an Insured dies as the result of an Injury that occurs from one of the Accident Hazards described below. The Accidental Death Benefit is shown on your Certificate Schedule. Death must occur within 90 days (180 days if this Certificate is issued in New Mexico) of the accident causing the Injury.

**Motor Vehicle Hazard:** This Hazard occurs if an Insured dies as a result of being Injured:
- a. while riding in or driving a Private Passenger Automobile;
- b. if struck, as a pedestrian, by a Private Passenger Automobile or any other Land Motor Vehicle; or
- c. while driving for hire a Land Motor Vehicle.

**Common Carrier Hazard:** This Hazard occurs if an Insured dies as a result of being Injured while:
- a. riding as a fare paying passenger on a Common Carrier; or
- b. getting on or off a Common Carrier.

## PART IV: EXCLUSIONS

The Certificate does not cover death caused by or contributed to by any of the following:

1. intentionally self-inflicted injury, suicide or any attempt at suicide while sane or insane (in Missouri, while sane);
2. the Insured having a blood alcohol level of .10% (by weight or volume) or higher;
3. taking or using any narcotic, barbiturate or any other drug, unless taken or used as prescribed by a physician;
4. taking of alcohol in combination with any drug, medication or sedative;
5. any sickness or its medical or surgical treatment (except bacterial infections which result from an Injury or accidental ingestion of contaminated substances) or Mental Disease or Disorder;
6. voluntary gas inhalation or poison voluntarily taken, administered or inhaled.
7. air travel as a pilot or crew member;
8. committing or attempting to commit any illegal activity;
9. participating in any race or speed contest involving motor vehicles of any type;
10. any active participation in a riot, insurrection or war, either declared or undeclared.

## PART V: BENEFICIARY

1. **BENEFICIARY:** You choose the person who receives the death benefit when an Insured dies. This person is called the Beneficiary. If there is no Beneficiary when the Insured dies, benefits are paid: (1) to his living spouse; or (2) if he does not have one, in equal shares to his living, lawful children; or (3) if there are none, in equal shares to his living, lawful parents; or (4) if there are none, in equal shares to his living, lawful brothers and sisters; or (5) if there are none, to his estate. Spouse means only the one to whom he is lawfully married on the date of his death. Except in the case of a legal adoption, lawful children, parents, brothers and sisters do not mean "step" children, parents, brothers or sisters. Any other benefits will be paid to you or to someone else that you request to receive benefits. Such request is subject to our prior approval.

2. **CHANGE OF BENEFICIARY:** Unless you indicate that a Beneficiary cannot be changed, you can change the Beneficiary at any time. The Beneficiary's consent is not needed. We will make the change only if we first acknowledge receipt of your notice. It will take effect on the date the notice was signed. The change is subject to: (1) the rights of any assignee; and (2) any payment made or action taken by us before our acknowledgement.

## PART VI: WHEN THERE IS A CLAIM

1. **NOTICE OF CLAIM:** Written Notice of claim must be given to us within 60 days after an Insured's death or as soon as possible. Notice can be given to our Administrative Offices at Valley Forge, Pennsylvania 19493, or to one of our authorized agents. Notice should include the Insured's name and Certificate Number.

2. **CLAIM FORMS:** When we receive a notice of claim we will send the claimant forms for filing proof of loss. If we do not do so within fifteen days, a written statement of the nature and extent of the loss should be submitted within the time fixed for Proof of Loss.

3. **PROOF OF LOSS:** Written proof of loss must be provided within 90 days after the date of loss. If it is not reasonably possible to furnish the necessary proof within the 90 days, a claim will not be reduced or denied because of failure to do so. In any event, except if not legally able to do so, proof of loss must be given no later than 1 year from the time the loss occurred. (This one year time limit does not apply in Missouri.)

4. **TIME OF PAYMENT OF CLAIM:** We will pay benefits as soon as the claimant files written proof of loss.

   In Mississippi, valid claims not paid within 45 days after we receive written proof of loss are credited with interest. It is payable at a rate of 1.5% per month until the claim is finally settled. It is calculated from the date written proof is received. If we fail to pay benefits when due, you may bring action to recover such benefits and any other damages.

   In Missouri, valid claims not paid within 30 days after we receive proof of death are credited with interest. It is paid at the rate of 9% per annum. It is calculated from the date of the Insured's death until the date the claim is paid.

5. **CLAIMS PAYABLE:** All sums payable by us will be payable to the Beneficiary or Beneficiaries on file at our Office subject to: (1) our receipt of due proof of death; and (2) the rights of any assignee of record.

6. **PHYSICAL EXAMINATION AND AUTOPSY:** When there is a claim, we reserve the right, at our expense, to examine the hospital charts and records of an Insured and to conduct an Autopsy, where not prohibited by law. (The right to conduct an Autopsy does not apply in Mississippi.)

## PART VII: GENERAL PROVISIONS

1. **LEGAL ACTIONS:** You may not bring a lawsuit against us (e.g., if we do not pay a claim): (1) during the 60 days after we receive written notice or loss; or (2) after 3 years (5 years in Missouri) from the time written proof of loss is required.

2. **OTHER INSURANCE IN THIS COMPANY:** If, at any one time, an Insured is covered under more than one Certificate or Policy issued by us which provides the same or similar coverage, making the total indemnity for accidental death in excess of $250,000, the excess insurance shall be void. All premiums paid for such excess shall be returned to you or to your estate.

3. **PRONOUNS:** Masculine pronouns shall include the feminine gender unless the context indicates otherwise.

4. **ENTIRE CONTRACT CHANGES:** The Policy, the Policyholder's Application, this Certificate, and any endorsements make up the entire legal contract between the parties. No change in this Certificate is effective until approved by one of our officers. Such approval must be noted on or attached to this Certificate. No agent may change this Certificate or waive any of its provisions.

5. **MISSTATEMENT OF AGE:** If an Insured's age is misstated, benefits are changed to what the premium buys at the correct age.

6. **CLERICAL ERROR:** Neither record keeping errors nor delays in making entries will keep this Certificate in force or continue insurance which was validly terminated. If we find any such error or delay, we will make a fair adjustment of premiums.

7. **CANCELLATION:** Only you may cancel this Certificate. You may cancel it by delivering or mailing written notice to us. You must specify the effective date of your cancellation. We may delay the date you request until your next monthly due date. Any unused premium is pro-rated from the date of cancellation and refunded to you. If you do not specify a specific date, your cancellation is effective on your next premium due date. Cancellation is without prejudice to any claim originating prior to the date of cancellation.

## PART VIII: PREMIUMS

1. **PREMIUMS:** Premiums must be paid by the due date or during the grace period. If we bill you directly, you can pay using any of the Renewal Premium intervals shown on the Schedule. Premiums can be paid in advance. All premiums are payable to Peoples Benefit Life Insurance Company (Valley Forge, Pennsylvania 19493).

   **CREDIT CARD PAYMENT:** If credit card payment is used, our receipt of your credit card billing authorization will be treated as receipt of payment. The credit card company assumes the duty to pay each premium when due. You will be billed by them through the credit card. Premiums will be paid for as long as you authorize payment and your credit card remains in effect. This is subject to the option of the credit card company not to make payment if your credit card account is over limit or past due.

**CREDIT CARD PAYMENT CANCELLATION:** If you choose to cancel this insurance, you must notify us in writing. We will stop credit card billing. You must pay for any coverage prior to the date your written request for cancellation is received.

**AUTOMATIC BANK ACCOUNT PAYMENT:** If bank account payment is used, our receipt of your authorization to deduct premiums from your bank account will be treated as receipt of payment. The bank will pay each premium when due. Premiums will be paid for as long as you authorize payment, provided there are enough funds in your bank account to pay the premium.

**BANK ACCOUNT PAYMENT CANCELLATION:** If you choose to cancel this insurance, you must notify us in writing. We will stop bank account deductions. You must pay for any coverage prior to the date your written request for cancellation is received.

2. **RIGHT TO ADJUST PREMIUMS:** We may change our Table of Premium Rates on any date. Any change made to your premium will be made on a uniform basis to all insureds of the same class. We will not increase your rates in the first 12 months of coverage. After that, we will not increase your rates more than once in any 12 month period. We will send you at least 60 days prior notice of any rate increase.

3. **GRACE PERIOD:** You have a grace period of 31 days after the due date to pay each renewal premium. The coverage stays in force if the premium is paid during this grace period. If the premium is not paid within this grace period, this insurance will stop. If an Insured dies during the grace period, any premium due will be deducted from the death benefit.

4. **UNPAID PREMIUM:** When a claim is paid, any premium due and unpaid may be deducted from the claim payment.

5. **REINSTATEMENT OF CERTIFICATES:** If your premium is not paid before the grace period ends, your Certificate will lapse. Later acceptance of premium (by us or by an agent authorized to accept payment) without requiring an application for reinstatement will reinstate the Certificate.

We may require an application for reinstatement. If so, you will be given a conditional receipt for the premium. When the application is approved, the Certificate will be reinstated as of the approval date. Lacking such approval, the Certificate will be reinstated on the 45th day (30th day in New Mexico) after the date of the conditional receipt unless we have previously written you of our disapproval.

The reinstated Certificate will cover only loss due to an Injury sustained after the date of reinstatement. In all other respects our rights and your rights will remain the same, subject to any provisions noted on or attached to the reinstated Certificate.

Daniel P. Buckley
Buckley Law Office, P.C.
125 West Mendenhall
Bozeman, Montana 59715
Ph:  (406) 587-3346
Fax: (406) 585-7654
dbuckley@danbuckleylaw.com

Daniel B. Bidegaray
BIDEGARAY LAW FIRM, LLC
2042 Stadium Dr., Suite 1
Bozeman, MT 59715
Ph:  (406) 522-7744
Fax: (406) 522-8244
Daniel@Bidegaraylawfirm.com
*Attorneys for Plaintiffs*



**MONTANA EIGHTEENTH JUDICIAL DISTRICT COURT, GALLATIN COUNTY**

| | |
|---|---|
| WILLIAM DUN, Individually and as the PERSONAL REPRESENTATIVE OF THE ESTATE OF DUN, IRENE DUN, SHERYL DUN, PAT RUGGIERI, and DORA MENGEL,<br><br>Plaintiffs,<br><br>v.<br><br>TRANSAMERICA PREMIER LIFE INSURANCE COMPANY, F/K/A MONUMENTAL LIFE INSURANCE COMPANY, F/K/A PEOPLES BENEFIT LIFE INSURANCE COMPANY, AND DOES I – V,<br><br>Defendants. | Cause No. DV-15-982B<br><br><br>**PLAINTIFFS' FIRST SET OF DISCOVERY REQUESTS TO ALL DEFENDANTS** |

TO:    Defendants:

PLEASE TAKE NOTICE that, under Rules 26, 33, 34, and 35 of the Montana Rules of Civil Procedure, you must answer separately and fully, in writing, under oath each of these interrogatories and requests, within forty-five (45) days from service upon you.

In answering these interrogatories and requests, you are admonished:

a. That the information requested includes such as you know of your personal knowledge, and that which is available to you, including, but not limited to, information in the possession of your attorney, insurance carriers, agents, or employees, or anyone else acting on your behalf or on their behalf.

b. That if answering party is a public or private corporation, or partnership, association, or a governmental agency, the answering officer, or officers, agent or agents, shall furnish such information as is available to the entity itself, and not merely that which is available to him or her personally:

    i. The identity and location of persons having knowledge of discoverable matters, and

    ii. The identity of each person expected to be called as an expert witness at trial on the subject matter upon which he is expected to testify and the substance of his testimony.

c. That you are under a duty seasonably to amend a prior response to these interrogatories and requests if information is obtained which discloses:
That the response was correct when made, but is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

d. That if, without substantial justification, you either refuse to answer or provide an evasive or incomplete answer to these propounded interrogatories and requests, the Court may order you to answer the same, and that you, your attorney, or both pay the party propounding these interrogatories and requests for reasonable expenses incurred in obtaining such order, including attorney fees.  And, requests that the defendant produce all documents in its possession and/or control concerning these subject matters.

## DEFINITIONS

Words in these interrogatories and requests are defined as follows:

(a) **DOCUMENT or DOCUMENTATION** means a writing, and includes the original or a copy of handwriting, typewriting, printing, photocopying, photographing, e-mail, computer logs, computer data of any sort, correspondence, interoffice memos, notes, and every other means of recording upon any tangible thing and form of communicating or representation, including electronic means, letters, words, pictures, sounds, or symbols, or combinations of them.

(b) **PERSON** includes a natural person, firm, association, organization, partnership, business, trust, corporation, or public entity.

(c) **PLAINTIFFS' CLAIM(S)** means and includes the Plaintiffs' request for accidental death benefits which is the subject of the Complaint, and includes the circumstances and events which are the subject of Plaintiffs' Complaint.

(d) **YOU, YOUR OR ANYONE ACTING ON YOUR BEHALF,** includes you, your agents, your employees, your insurance companies, your predecessors, their agents, their employees, your and their attorneys, accountants, investigators, actuaries, and any trade and/or group name and anyone else acting on your or your predecessor's behalf.

**NOTE:  These discovery requests are directed at all named Defendants, and includes any information and documents which the predecessor Defendants would possess. These predecessors are, under information and belief, companies which either merged with Transamerica Premier Life Insurance Company, or its predecessors, or were the same entity but doing business under a different name.**

Plaintiffs' First Discovery Requests to All Defendants

(e)   **SPECIMEN GROUP ACCIDENTAL DEATH INSURANCE CERTIFICATE** means the Certificate 00B0-RT0U which is attached to Plaintiffs' Complaint as Exhibit B.

(f)   **ENROLLMENT FORM** is that insurance product which is attached to Plaintiffs' Complaint as Exhibit A.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1**:  Admit the insurance for Group hospital accident indemnity benefits you sold (Certificate AC07096) Ms. Irmadel Dun was in full force and effect in March of 2013.

ANSWER:

**REQUEST FOR ADMISSION NO. 2**:  Admit the insurance for accidental death benefits **you** sold to Ms. Dun was in full force and effect in March of 2013.

ANSWER:

**REQUEST FOR ADMISSION NO. 3**:  Admit the **Enrollment Form** for Ms. Dun was in full force and effect in March of 2013.

ANSWER:

**REQUEST FOR ADMISSION NO. 4**:  Admit that Ms. Dunn timely paid premiums for the accidental death benefits **you** sold her which is the subject of this litigation.

ANSWER:

**REQUEST FOR ADMISSION NO. 5**:  Admit Ms. Dun was sold accidental death benefits insurance by mail solicitation.

ANSWER:

**REQUEST FOR ADMISSION NO. 6**:  Admit you mailed Ms. Dun the **Enrollment Form**.

ANSWER:

**REQUEST FOR ADMISSION NO. 7**:  Admit that Ms. Dun signed the **Enrollment**

Form.

   ANSWER:

**REQUEST FOR ADMISSION NO. 8**:  Admit you did not mail Ms. Dun the **Specimen Group Accidental Death Insurance Certificate** when you mailed her the **Enrollment Form**.

   ANSWER:

**REQUEST FOR ADMISSION NO. 9**:  Admit **you** did not deliver to Ms. Dun, by mail or otherwise, the **Specimen Group Accidental Death Insurance Certificate**.

   ANSWER:

**REQUEST FOR ADMISSION NO. 10**:  If **you** denied (in part or whole) the previous two Requests for Admission, then admit **you** have no transmittal letter (or other similar document) showing you delivered the **Specimen Group Accidental Death Insurance Certificate**, by mail or otherwise, to Ms. Dun.

   ANSWER:

**REQUEST FOR ADMISSION NO. 11**:  Admit that the **Specimen Group Accidental Death Insurance Certificate** is a copy of the Certificate you sent Ms. Dun's adult children and to the Montana Insurance Commissioner's Office, after Ms. Dun's death.

   ANSWER:

**REQUEST FOR ADMISSION NO. 12**:  Admit that the **Specimen Group Accidental Death Insurance Certificate** that **you** provided to Ms. Dun's adult children and to the Montana Insurance Commissioner's Office, after Ms. Dun's death, is not a true and correct copy of the original Certificate **you** purportedly sent to Ms. Dun.

   ANSWER:

**REQUEST FOR ADMISSION NO. 13**:  Admit you do not have evidence or proof that

the **Specimen Group Accidental Death Insurance Certificate** that **you** provided to Ms. Dun's adult children and to the Montana Insurance Commissioner's Office, after Ms. Dun's death, is an actual duplicate copy of the original Certificate **you** purportedly sent to Ms. Dun.

ANSWER:

**REQUEST FOR ADMISSION NO. 14**:  Admit that when you sold Ms. Dun accidental death benefits insurance, she was not part of a "Group" for which this insurance was sold.

ANSWER:

**REQUEST FOR ADMISSION NO. 15**:  Admit that a reasonable person would believe from the **Enrollment Form** that they were purchasing $100,000 worth of death benefits coverage if the death is due to an accident.

ANSWER:

**REQUEST FOR ADMISSION NO. 16**:  Admit that a reasonable person would believe from the **Enrollment Form** that accidental death benefits would be paid even if they did not die in a "motor vehicle hazard" or "common carrier hazard".

ANSWER:

**REQUEST FOR ADMISSION NO. 17**:  Admit that a reasonable person would believe from the **Enrollment Form** that if he/she died in an accident while riding in a ¼ ton pickup that accidental death benefits would be paid.

ANSWER:

**REQUEST FOR ADMISSION NO. 18**:  Admit that a reasonable person would believe from the face page of the **Specimen Group Accidental Death Insurance Certificate** that they were purchasing $100,000 worth of death benefits coverage if the death is due to an accident.

ANSWER:

**REQUEST FOR ADMISSION NO. 19**:  Admit that a reasonable person would believe

from the face page of the **Specimen Group Accidental Death Insurance Certificate** that accidental death benefits would only be paid even if they did not die in an "motor vehicle hazard" or "common carrier hazard".

**ANSWER**:

**REQUEST FOR ADMISSION NO. 20**:  Admit that a reasonable person would believe from the face page of the **Specimen Group Accidental Death Insurance Certificate** that if he/she died in an accident while riding in a ¾ ton pickup that accidental death benefits would be paid.

**ANSWER**:

## INTERROGATORIES

**INTERROGATORY NO. 1**:  If **your** Response to any of the Requests for Admissions is anything but an unqualified admission, please state all facts in support of your Answer(s).

**ANSWER**:

**INTERROGATORY NO. 2**:  Please identify every **person** providing information or in any manner assisting in answering these discovery requests.

**ANSWER**:

**INTERROGATORY NO. 3**:  Identify every **person** known to **you** with information about **Plaintiffs' claim**, the substance of their knowledge, the dates they worked on her **claims** and each person's respective responsibilities.

**ANSWER**:

**INTERROGATORY NO. 4**:  Identify all training, guidelines, standard operating procedure guides, rules, manuals, directives, etc., claims manuals, "Best Practices" guidelines, or claims handling manuals that discuss or reference the following:

Plaintiffs' First Discovery Requests to All Defendants

a) evaluation of claims for accidental death benefit policies/certificates; and

b) the review, evaluation, handling, adjusting, investigation, approval and/or denial of claims, for accidental death benefit policies/certificates;

**ANSWER**:

**INTERROGATORY NO. 5**:  Please list and identify the exhibits **you** intend or expect to introduce into evidence at the trial of the above entitled matter and state the name and address of the **person** having possession of the exhibits.

**ANSWER**:

**INTERROGATORY NO. 6**:  Identify every witness **you** plan to call to testify at the trial of this action (including rebuttal, impeachment or other purposes) and summarize the facts to which each such witness will testify.

**ANSWER**:

**INTERROGATORY NO. 7**:  Please identify every **person** who **you** expect to use at trial to present expert testimony, and for each expert, please provide:

a) Name, address and telephone number of the expert;

b) A complete statement of all opinions to be expressed and the basis and reasons therefore;

c) The data or other information considered by the witness in forming the opinions;

d) The exhibits to be used as a summary of or support for the opinions;

e) The qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years;

f) The compensation to be paid for the testimony;

g) A copy of the expert's curriculum vitae; and,

h)  A listing of the other cases in which the witness has testified as an expert at trial or by deposition within the preceding four (4) years.

**ANSWER**:

**INTERROGATORY NO. 8**:  Describe why you contend death benefits are not owed.

**ANSWER**:

**INTERROGATORY NO. 9**:  For any denial of the allegations in Plaintiffs' Complaint, please describe the following for each such denial (a separate response is requested for each):

a)  All facts upon which **you** base your denial of Plaintiffs' allegations;

b)  All **documents** known to **you**, which you allege support your denial of Plaintiffs' allegations; and,

c)  For any denial or non-answer based on lack of knowledge, list all **documents** and materials reviewed that support **your** denial.

**ANSWER**:

**INTERROGATORY NO. 10**:  Regarding all affirmative defenses, which **you** have alleged or intend to allege in response to Plaintiffs' Complaint, please describe with particularity:

a)  All facts upon which **you** base your affirmative defense;

b)  All **documents** known to **you**, which you allege support affirmative defense; and,

c)  State the full extent of your efforts to inquire concerning the subject matter of the request, list all **documents** and materials supporting **your** affirmative defense.

**ANSWER**:

**INTERROGATORY NO. 11**:  Regarding all liability defenses, which **you** have alleged or intend to allege in response to Plaintiffs' Complaint, please describe with particularity:

a)  All facts upon which **you** base your liability defense;

b) All **documents** known to **you**, which **you** allege support liability defense; and,

c) State the full extent of **your** efforts to inquire concerning the subject matter of the request, list all **documents** and materials supporting your liability defense.

**ANSWER**:

**INTERROGATORY NO. 12**:  Describe the incentive, bonus, initiative or award programs which **your** employees receive, or can receive, from January 1, 2012, to the present.

**ANSWER**:

**INTERROGATORY NO. 13**:  Identify the **person(s)** who sent Ms. Dun the mail solicitation to sell her the accidental death insurance benefits at issue.

**ANSWER**:

**INTERROGATORY NO. 14**:  Identify and describe the substance of the mail solicitation used to sell Ms. Dun accidental death insurance benefits in or about November 2003, and the **person(s)** who would have knowledge about the substance of the mail solicitation.

**ANSWER**:

**INTERROGATORY NO. 15**:  Identify and describe when you contend the **Specimen Group Accidental Death Insurance Certificate** was mailed or provided to Ms. Dun and each document you contend supports that it was mailed to her.

**ANSWER**:

**INTERROGATORY NO. 16**:  Identify the "Group" for the **Specimen Group Accidental Death Insurance Certificate**.

**ANSWER**:

**INTERROGATORY NO. 17**:  Identify why Ms. Dun was a member of the "Group" for **Specimen Group Accidental Death Insurance Certificate**, and how she became a member of the "Group".

**ANSWER**:

**INTERROGATORY NO. 18**:  Identify the plan administrator and underwriter for the **Specimen Group Accidental Death Insurance Certificate**.

**ANSWER**:

**INTERROGATORY NO. 19**:  Identify every State **you** sell and have sold the **Specimen Group Accidental Death Insurance Certificate**.  For each State, identify the years this product has been sold by **you**.

**ANSWER**:

**INTERROGATORY NO. 20**:  For the **Specimen Group Accidental Death Insurance Certificate**, identify every insured **you** have <u>denied</u> insurance benefits (which includes the insured's estate and/or heirs of the insured) because the insured's death allegedly <u>did not</u> arise from "Accident Hazards" (including words to that effect, and including "motor vehicle hazard" and/or "common carrier hazard").

For each, identify the insured (or the estate name, the heirs and/or the claimants), the date the policy was sold to the insured, the date of death, the amount of the benefit under the policy, and the reasons given for denial.

**ANSWER**:

**INTERROGATORY NO. 21**:  For each insured that received an **Enrollment Form** like that received by Ms. Dunn, and who purchased accident death benefits like Ms. Dun with said **Enrollment Form**, identify every insured you have denied insurance benefits (which includes

the insured's estate and/or heirs of the insured) because the insured's death allegedly <u>did not</u> arise from "Accident Hazards" (including words to that effect, and including "motor vehicle hazard" and/or "common carrier hazard").

For each, identify the insured (or the estate name, the heirs and/or the claimants), the date the policy was sold to the insured, the date of death, the amount of the benefit under the policy, and the reasons given for denial.

<u>ANSWER</u>:

<u>INTERROGATORY NO. 22</u>:  On the **Enrollment Form** the following numbers and/or codes appear.  For each such number/code, identify and describe its meaning, what it references, when each was added to the **Enrollment Form** and describe how each was decoded:

a.  NHC-3260-0801
b.  HAP677
c.  HMA1696
d.  MP02633
e.  B0009172
f.  C#20031HKKJQH0 0001
g.  0#00B0-RTOU
h.  PWHLSG
i.  NHGA-ADB-0801
j.  PN 02/02

<u>ANSWER</u>:

<u>INTERROGATORY NO. 23</u>:  Attached as **Exhibit 1** is a letter from Monumental Life Insurance Company, dated August 26, 2011, and a "Statement of Insurance Coverage" attached thereto, addressed to Ms. Dun.  Please identify:

a.  What this document "Statement of Insurance Coverage" is;

b.  What the codes "GLLSUMMARY (SUMLCVR)", "GLLSUMMARY2 POSSUMLPG2", and "GXLFICHE C0332" mean and how they are used by **you**;

c.  What the bar code below the "Irmadel N Dun" address references and how it is used by **you;**

d.  What the bar code below the "Nancy Crockett" signature references and how it is used by **you;**

e.  When and why **you** first started referencing this insurance for accidental death benefits as "Motor Vehicle and Common Carrier Accidental Death Benefit"; identify the person who has the most knowledge about this issue and describe the documents that reference this issue;

f.  Whether Ms. Dun received any other "Statement of Insurance Coverage", and if so, when **you** sent them to her; and, describe why this document was sent to Ms. Dun on August 26, 2011, by **you.**

**ANSWER:**

## REQUEST FOR PRODUCTION OF DOCUMENTS

**Please produce the following and label as "Request for Production" followed by the corresponding request number (i.e. Request for Production 1).**

1.  The organizational chart of **your** claims department.

2.  All claims supervision manuals that discuss or mention:

    a.  evaluation of claims for accidental death policies/certificates; and

    b.  the review, evaluation, handling, adjusting, investigation, approval and/or denial of claims, payment of benefits for advance payments accidental death policies/certificates.

3.  All claims committee and round tabling procedures that discuss or mention:

    a.  evaluation of claims for accidental death policies/certificates; and

    b.  the review, evaluation, handling, adjusting, investigation, approval and/or denial of claims, payment of benefits for accidental death policies/certificates.

4.    All Montana Insureds' complaint log for the eight years immediately preceding the filing of this lawsuit to date in which the insured or claimant submitted a complaint for **your** failure to pay accidental death benefits.

5.    All training, guidelines, standard operating procedure guides, rules, manuals, directives, etc., claims manuals, "Best Practices" guidelines, and claims handling manuals that discuss or reference, as it pertains to:

    a.  evaluation of claims for accidental death policies/certificates; and

    b.  the review, evaluation, handling, adjusting, investigation, approval and/or denial of claims, payment of benefits for accidental death policies/certificates;

6.    All intra- or inter-office memoranda, e-mails, and intra- or inter-office correspondence that discusses or references, as it pertains to:

    a.  the evaluation of claims for accidental death policies/certificates; and

    b.  the review, evaluation, handling, adjusting, investigation, approval and/or denial of claims, payment of benefits for accidental death policies/certificates.

7.    All claims files, guidelines, memoranda, emails, intra/inter-office correspondence, in which policies, procedures, training tools, or guidelines are discussed or referenced in relationship to:

    a.  evaluation of claims for accidental death policies/certificates; and

    b.  the review, evaluation, handling, adjusting, investigation, approval and/or denial of claims, payment of benefits for accidental death policies/certificates.

8.  A complete copy of every document Ms. Dunn received with the **Enrollment Form**.

9. For the **Enrollment Form**, produce the following:

    a. All solicitation materials sent to Ms. Dun;

    b. All materials sent to Ms. Dun regarding this product;

    c. All telephone scripts regarding the sale of this product;

    d. All mail solicitation materials regarding the sale of this product;

    e. All advertising and marketing materials regarding this product;

    f. All materials provided to your agents, captive or independent, regarding this product;

    g. All applications for the purchase of this product filled out by Ms. Dun;

    h. A certified copy of the actual **Enrollment Form** sent to Ms. Dun;

    i. A certified copy of all prior and subsequent "enrollment form(s)" regarding this product;

    j. All statements of insurance sent to Ms. Dun;

    k. All summary forms or plan summaries sent to Ms. Dun;

    l. All letters or other materials sent to Ms. Dun;

    m. All transmittal letters of materials and information sent to Ms. Dun regarding this **Enrollment Form**, including all mail solicitations;

    n. The claims file for Ms. Dun, including all electronic information and documents, and including reserve amounts, relating to the request for payment of accidental death benefits;

    o. The underwriting file;

    p. All interoffice memorandums, letters, e-mail messages, and other written communications in connection with **Plaintiffs' claims**;

q.  All declaration pages;

r.  All billing statements for charging of premiums; and

s.  All payments for premiums.

10.  For the **Specimen Group Accidental Death Insurance Certificate**, produce the following:

a.  All "enrollment forms" sent to Ms. Dun;

b.  All "enrollment forms" signed by Ms. Dun;

c.  All solicitation materials sent to Ms. Dun;

d.  All telephone scripts regarding the sale of this product;

e.  All mail solicitations materials regarding the sale this product;

f.  All advertising and marketing materials regarding this product;

g.  All materials provided to your agents, captive or independent, regarding this product;

h.  All applications for the purchase of this product filled out by Ms. Dun;

i.  A certified copy of the actual Certificate or Policy sent to Ms. Dun;

j.  A certified copy of all prior and subsequent Certificates regarding this product;

k.  A certified copy of the policy for **your** insured, Ms. Dun, which was in full force and effect on the date of the March 8, 2013, regarding accidental death benefits;

l.  All statements of insurance sent to Ms. Dun;

m.  All summary forms or plan summaries sent to Ms. Dun;

n.  All letters or other materials sent to Ms. Dun regarding this product;

o.  All transmittal letters of materials and information sent to Ms. Dun;

p.  All transmittal letters of the Certificate and/or Policy sent to Ms. Dun;

q.  The claims file for Ms. Dun, including all electronic information and **documents**, and including reserve amounts, relating to the request for payment of accidental death benefits;

r.  The underwriting file;

s.  All interoffice memorandums, letters, e-mail messages, and other written communications in connection with **Plaintiff's claims**;

t.  A copy of all declaration pages;

u.  All **documents** establishing the "Group";

v.  All **documents** establishing the Plan Administrator for the "Group";

w.  All **documents** regarding the underwriting for the "Group";

x.  All transmittal **documents** to Ms. Dun regarding the "Group", any documents sent to Ms. Dun regarding the "Group" including any documents sent to Ms. Dun explaining the "Group" she is a part of;

y.  All **documents** Ms. Dun sent regarding the "Group";

z.  All billing statements for charging of premiums; and

aa. All payments for premiums.

11. For Certificate AC07096, titled "Group Accident Insurance Certificate", produce the following:

a.  All "enrollment forms" sent to Ms. Dun;

b.  All "enrollment forms" signed by Ms. Dun;

c.  All solicitation materials sent to Ms. Dun;

d.  All telephone scripts regarding the sale of this product;

e.  All mail solicitations materials regarding the sale of this product;

Plaintiffs' First Discovery Requests to All Defendants

f.  All advertising and marketing materials regarding this product;

g.  All materials provided to your agents, captive or independent, regarding this product;

h.  All applications for the purchase of this product filled out by Ms. Dun;

i.  A certified copy of the actual Certificate or Policy sent to Ms. Dun;

j.  A certified copy of all prior and subsequent Certificates regarding this product;

k.  A certified copy of the policy for **your** insured, Ms. Dun, which was in full force and effect on the date of the March 8, 2013, regarding accidental death benefits;

l.  All statements of insurance sent to Ms. Dun;

m.  All summary forms or plan summaries sent to Ms. Dun;

n.  All letters or other materials sent to Ms. Dun regarding this product;

o.  All transmittal letters of any materials and information sent to Ms. Dun;

p.  All transmittal letters of the Certificate and/or Policy sent to Ms. Dun;

q.  The claims file for Ms. Dun, including all electronic information and **documents**, and including any reserve amounts, relating to the request for payment of accidental death benefits;

r.  The underwriting file;

s.  All interoffice memorandums, letters, e-mail messages, or other written communications in connection with **Plaintiff's claims**;

t.  A copy of all declaration pages;

u.  All **documents** establishing the "Group";

v.  All **documents** establishing the Plan Administrator for the "Group";

w.  All **documents** regarding the underwriting for the "Group";

    x.  All transmittal documents to Ms. Dun regarding the "Group", any documents sent to Ms. Dun regarding the "Group" including any documents sent to Ms. Dun explaining the "Group" she is a part of;

    y.  All **documents** Ms. Dun sent regarding the "Group";

    z.  All billing statements for charging of premiums; and

    aa.  All payments for premiums.

12.    Produce each of these documents, which are found on the **Enrollment Form**, attached to the Complaint:

    a.  NHC-3260-0801
    b.  HAP677
    c.  HMA1696
    d.  MP02633
    e.  B0009172
    f.  C#20031HKKJQH0 0001
    g.  0#00B0-RTOU
    h.  PWHLSG

13.  For each of the following from **Exhibit 1,** (letter from Monumental Life Insurance Company, dated August 26, 2011, and a "Statement of Insurance Coverage"), produce the documents:

    a.  "GLLSUMMARY (SUMLCVR)", "GLLSUMMARY2 POSSUMLPG2", and "GXLFICHE C0332";

    b.  Related to the bar code below the "Irmadel N Dun" address;

    c.  Related to the bar code below the "Nancy Crockett" signature;

    d.  Related to when and why **you** first started referencing this insurance for accidental death benefits as "Motor Vehicle and Common Carrier Accidental Death Benefit";

    e.  Related to any other "Statement of Insurance Coverage"; and related to why this document was sent to Ms. Dun on August 26, 2011, by **you.**

14.    All **documents** that reference incentive, bonus, initiative or award programs related to any of Defendants' employees claims personnel and their superiors from January 1, 2012, to present.

15.    All documents received and sent to the Montana Insurance Commissioner's Office regarding **Plaintiffs' claims**.

16.    All documents <u>sent</u> to the Montana Insurance Commissioner's Office seeking approval to sell the products in Montana which are the subject of this litigation, to wit: Certificate AC07096, the **Specimen Group Accidental Death Insurance Certificate** and the **Enrollment Form**.

17.    All documents <u>received</u> from the Montana Insurance Commissioner's Office seeking approval to sell the products in Montana which are the subject of this litigation, to wit: Certificate AC07096, the **Specimen Group Accidental Death Insurance Certificate** and the **Enrollment Form**.

18.    All loss ratio statements which you have provided to any Insurance Commissioner office regarding for the sale of accidental death benefits for the **Specimen Group Accidental Death Insurance Certificate**, and similar products, and for the product sold with the **Enrollment Form**.

19.    All company **documents** that relate to and/or reference the actual loss ratios for the **Specimen Group Accidental Death Insurance Certificate**, and the product sold with the **Enrollment Form** and similar forms.

20.    Produce each denial letter and the claims file for each insured <u>denied</u> benefits under the **Enrollment Form**, on the grounds that the insured's death allegedly <u>did not</u> arise from "Accident Hazards" (including words to that effect, and including "motor vehicle hazard"

and/or "common carrier hazard").

21.    Produce each denial letter and the claims file for each insured <u>denied</u> benefits under the **Specimen Group Accidental Death Insurance Certificate** because the insured's death allegedly <u>did not</u> arise from "Accident Hazards" (including words to that effect, and including "motor vehicle hazard" and/or "common carrier hazard").

22.    All record retention procedures and policies.

23.    All record destruction procedures and policies.

24.    All documents that assist **you** in decoding the various numbers that correlate with the various policy forms and/or policy numbers from the date Ms. Dun was initially sold insurance by you to date.  That is, evidence that would establish a particular policy or certificate number is associated with particular policy or certificate.

25.    All documents referenced in your responses to these discovery requests and all documents that support your responses.

DATED this 15th day of April, 2016.

BIDEGARAY LAW FIRM, LLC

DANIEL B. BIDEGARAY
*Attorney for Plaintiffs*

## Monumental Life Insurance Company
Administrative Office
Valley Forge, PA 19493

Mrs Irmadel N Dun
Apt 312
1215 Durston Rd
Bozeman MT  59715-7002

August 26, 2011

RE:   OOBO-RTOU

Dear Sir or Madam,

We enjoy serving your insurance needs and look forward to continuing to
provide this service. I hope you find the following information helpful.
Enclosed is your Statement of Insurance coverage. The statement is evidence
that your policy/certificate was in force at the time the statement was issued
by our office. It also provides you with important facts about your
policy/certificate and current benefit information. The cash surrender value
provided is less any indebtedness and will show for the base coverage and/or
additional benefits if applicable, the cash surrender value is equal to the
paid to date of the contract or the date of this letter. Any changes made to
your coverage after the date of this letter will not be reflected.

Your insurance needs are important to us. If we can be of any further
assistance, please call us toll-free at 1-800-523-7900. One of our Customer
Services Representatives will be happy to assist you Monday through Friday 8
A.M. to 6 P.M., EST. or www.insuranceservicenow.com.

Sincerely,

*Nancy Crockett*
Director of Customer Support

GLLSUMMARY(SUMLCVR)



GXLFICHE C0332

Ex. 1

## *Statement of Insurance Coverage*

This Statement provides the current coverage of the policy/certificate and evidence that a policy/certificate was issued by the Company and is in force as of the date of the statement. It does not change or modify the terms and provisions of your policy/certificate in any manner.

Contract # 00BO-RTDU

Base Coverage Motor Vehicle and Common Carrier Accidental Death Benefit Coverage

Current Insured:  Mrs Irmadel N Dun

Effective Date: 12/13/2003

Issue Age:70

Current Net Benefit: $100000.00

Face Amount $100000.00

Cash Value for Base (if applicable): $0.00

Cash Value Effective Date (if applicable): 08/26/2011

Total Loan Balance (if applicable):$0.00

Designated Beneficiary(s): No beneficiaries designated.,

GLLSUMMARY2 POSSUMLPG2

*Brenda Clancy*
**President**

Ex. 1

ZIP 59601 $ 008.41
02 1W
0001398355 APR 20 20

FIRST CLA[...]

CERTIFIED MAIL™

7013 2250 0001 4644 7219



GENERAL COUNSEL
TRANSAMERICA PERMIRE LIFE INS CO
4333 EDGEWOOD RD NE MAILSTOP 2510
CEDAR RAPIDS IA 52499

3530

Vickie Mason
2520



COMMISSIONER OF SECURITIES & INSURANCE
OFFICE OF THE STATE AUDITOR
840 HELENA AVENUE
HELENA, MT 59601

