## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WILLIAM DUN, *et al.*,

      Plaintiffs,

         v.

TRANSAMERICA PREMIER LIFE
INSURANCE COMPANY, *et al.*,

      Defendants.

                               Civil Action No. 19-40 (JEB)

### <u>MEMORANDUM OPINION</u>

Undeterred by the sound of the final buzzer, Plaintiffs seek to push these proceedings into a fifth quarter. Just like most sporting contests, however, this one merits no extra time. After seeing their case fall at summary judgment, Plaintiffs now desire to add a heretofore-unpled claim under the D.C. Consumer Protection Procedures Act. Yet before the Court may entertain Plaintiffs' request to once again amend their Complaint, it must determine whether they have satisfied the stringent criteria under Federal Rule of Civil Procedure 59(e) for vacating the Court's final judgment. They plainly have not. The Court, accordingly, will deny Plaintiffs' Motion.

## I.    Background

The background of this case is set forth in this Court's prior summary-judgment Opinion. See <u>Dun v. Transamerica Premier Life Insurance Co.</u>, No. 19-40, 2020 WL 1065554 (D.D.C. Mar. 5, 2020). While the facts can be briefly encapsulated, the procedural history of the case is both more involved and more relevant to the instant Motion. In March 2013, Irmadel Dun, a 79-year-old resident of Montana, tripped on the sidewalk, struck her head, and died within a week

from ensuing complications.  Id. at *1.  Following her death, Dun's five adult children —

Plaintiffs in this action — sought to claim accidental-death benefits from Defendant

Transamerica Premier Life Insurance Company, whose corporate predecessor sold Dun an

insurance policy in November 2003.  Id. at *3.  Transamerica denied that claim, explaining that

Dun's insurance only covered deaths resulting from a motor-vehicle or common-carrier accident,

as opposed to any other sort of fatal mishap.  Id. at 1.

On December 11, 2015, Plaintiffs filed suit in Montana state court, challenging

Transamerica's interpretation of the policy and denial of Dun's claim.  After Defendants

removed the case to federal court in Montana, the parties proceeded to discovery.  Id. at *3.

Plaintiffs filed an Amended Complaint on June 30, 2017.  See ECF No. 21.  Two months later,

they filed a Second Amended Complaint, which retained their counts against Transamerica but

also raised claims, based on information learned in discovery, against new Defendants Financial

Planning Services, Inc. and Aegon Direct Marketing Services, Inc., Trustee and Administrator

respectively of a trust established to maintain insurance policies like Dun's.  Dun, 2020 WL

1065554, at *3.  The Second Amended Complaint, which is somewhat jumbled, appears to assert

counts for breach of contract, breach of fiduciary duty, breach of trustee duties, and breach of

administrator duties, while also requesting an administrative accounting.  See id.; ECF No. 28

(Second Amended Complaint), ¶¶ 92–125.

On August 29, 2018, Plaintiffs moved to transfer the case to the District of Columbia,

emphasizing those latter Defendants' substantial connections to our city.  See ECF No. 59

(Motion to Transfer) at 4–5, 9–10.  The Montana court granted that motion in January 2019, and

this Court assumed jurisdiction.  See ECF Nos. 78, 79.  Defendants sought permission to file

Amended Answers at an initial status conference on February 14, 2019.  The Court granted that

request, and the parties commenced a second round of discovery.  See ECF No. 85 (Scheduling Order) at 1.  At no point did Plaintiffs seek leave to amend their Second Amended Complaint or raise any count under the CPPA.

Following summary-judgment briefing, the Court granted Defendants' motion on all counts on March 5, 2020.  Dun, 2020 WL 1065554, at *8.  Notwithstanding Plaintiffs' position that Defendants' marketing materials and Insurance Certificate contained convoluted and contradictory language, the Court ruled that under the "plain terms of the contract, a reasonable person would have to conclude that the coverage is limited to motor-vehicle and common-carrier deaths."  Id. at *7.  The Court also explained that Defendants' marketing materials were neither "deceptive" nor "introduc[ed] ambiguity," but rather "served to further clarify the terms of the policy."  Id. at *8.  Finally, the Court made "quick work" of Plaintiffs' assertion, offered for the first time in their summary-judgment opposition, that Defendants had also violated the CPPA. Id. at *9.  As the Court explained, that claim was "not properly pleaded (or pleaded at all)," and binding circuit precedent precluded Plaintiffs from amending their Complaint in summary-judgment briefing.  Id.

Two weeks after entry of judgment, Plaintiffs sought leave to file a Third Amended Complaint, which explicitly alleged that Defendants' marketing materials contained deceptive and misleading representations in violation of the CPPA.  See ECF No. 113 (Motion to Amend). The Court denied that motion without prejudice, observing that Plaintiffs must first obtain vacatur of the judgment before seeking to amend their Complaint.  See Minute Order (3-18-2020).  Plaintiffs then promptly filed Motions for Reconsideration and Vacatur.  See ECF Nos. 115, 116.  The Court denied the former and denied the latter without prejudice, in part because Plaintiffs never attached their proposed amended complaint or explained why amendment should

be permitted at this stage.  See ECF No. 120 (Order).  The Court nevertheless afforded Plaintiffs another opportunity to file a Motion to Vacate Judgment and Amend the Complaint.  It warned, however, that any such motion "shall not rehash again the merits of the Court's summary-judgment ruling."  Id. at 3.  Plaintiffs now move once more to vacate the judgment and for leave to file a Third Amended Complaint.  See ECF No. 121 (Pl. Mot.).

## II.     Legal Standard

Ordinarily, leave to amend under Rule 15(a) "shall be freely given when justice so requires."  Ciralsky v. CIA, 355 F.3d 661, 673 (D.C. Cir. 2004).  "The entry of final judgment, however, is a game changer."  Trudel v. SunTrust Bank, 325 F.R.D. 23, 25 (D.D.C. 2018).  At that point, "a court cannot permit an amendment unless the plaintiff 'first satisf[ies] Rule 59(e)'s more stringent standard' for setting aside that judgment."  Ciralsky, 355 F.3d at 673 (quoting Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996)); see also DeGeorge v. United States, 521 F. Supp. 2d 35, 40–41 (D.D.C. 2007).  In other words, "[l]eave to amend a complaint after judgment may be granted only after the Court vacates that judgment" under Rule 59(e).  Foster v. Sedgwick Claims Mgmt. Servs., Inc., 159 F. Supp. 3d 11, 16 (D.D.C. 2015) (emphasis in original).  If the plaintiff fails to prevail on her motion to vacate the judgment, that is the end of the matter, and the Court must deny the motion to amend under Rule 15(a) as moot.  Ciralsky, 355 F.3d at 673; Mohammadi v. Islamic Republic of Iran, 947 F. Supp. 2d 48, 78–79 (D.D.C. 2013).

Rule 59(e) permits the filing of a motion to alter or amend a judgment when such motion is filed within 28 days after the judgment's entry.  The Court must apply a "stringent" standard when evaluating Rule 59(e) motions.  Ciralsky, 355 F.3d at 673.  "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening

change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Firestone, 76 F.3d at 1208 (internal quotation marks and citation omitted); see also 11 C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2810.1 at 158–62 (3d ed. 2012) (stating that "four basic grounds" for Rule 59(e) motion are "manifest errors of law or fact," "newly discovered or previously unavailable evidence," "prevent[ion of] manifest injustice," and "intervening change in controlling law"). Rule 59(e), moreover, "is not a vehicle to present a new legal theory that was available prior to judgment," Patton Boggs LLP v. Chevron Corp., 683 F.3d 397, 403 (D.C. Cir. 2012), or "to relitigate old matters." Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008) (citation omitted). "The strictness with which [Rule 59(e)] motions are viewed is justified by the need to protect both the integrity of the adversarial process in which parties are expected to bring all arguments before the court, and the ability of the parties and others to rely on the finality of judgments." Mohammadi, 947 F. Supp. 2d at 77 (quoting CFTC v. McGraw-Hill Cos., 403 F. Supp. 2d 34, 36 (D.D.C. 2005)).

## III.    Analysis

The Court will first examine Plaintiffs' Motion to Vacate before considering their Motion to Amend.

### A.    Motion to Vacate Judgment

At the outset, the Court notes that Plaintiffs have not sought to vacate this Court's judgment in light of an "intervening change of controlling law" or the "availability of new evidence." Ciralsky, 355 F.3d at 671. Instead, they assert solely that denying vacatur would result in "manifest injustice" and "manifest error." Pl. Mot. at 5; ECF No. 125 (Pl. Reply) at 2–4. This argument faces a decidedly uphill climb. "Manifest injustice" under Rule 59(e) is an "exceptionally narrow concept," which "'does not exist where . . . a party could have easily

5

avoided the outcome, but instead elected not to act until after a final order had been entered.'"

Slate v. Am. Broad. Cos., Inc., 12 F. Supp. 3d 30, 35 (D.D.C. 2013) (quoting Ciralsky, 355 F.3d

at 665).  "Clear error," moreover, must likewise conform to a "very exacting standard."

Mohammadi, 947 F. Supp. 2d at 78 (quoting Bond v. U.S. Dep't of Justice, 286 F.R.D. 16, 22

(D.D.C. 2012)); see also id. (explaining that final judgment must be "dead wrong" to constitute

clear error) (quoting Lardner v. FBI, 875 F. Supp. 2d 49, 53 (D.D.C. 2012)).  The Court finds

that Plaintiffs do not come close to satisfying these criteria.

> Plaintiffs initially contend that they need not even seek leave to amend their Complaint

because their desired CPPA claim — much to the surprise of the Court and Defendants — was in

fact present all along.  In other words, Plaintiffs maintain that because they "have alleged the

facts which give rise to their claim under the CPPA since the very first day of this litigation,"

disallowing that claim "would be a manifest error and would cause manifest injustice."  Pl. Mot.

at 5; see also id. at 7; Pl. Reply at 2, 6–7.

> This argument, however, quickly encounters a fundamental roadblock: as previously

noted, the Court has already ruled that Plaintiffs' "never-before-mentioned" CPPA claim was

"not properly pleaded (or pleaded at all)" and therefore does "not stand in the way of summary

judgment" in favor of Defendants.  Dun, 2020 WL 1065554, at *9.  The Court reached that

conclusion notwithstanding Plaintiffs' representations in their summary-judgment briefing that

the claim was somehow "adequately alleged" because their Complaint "informs the Defendants

that they have made the sort of misrepresentations" prohibited by the CPPA.  See ECF No. 110

(Pl. MSJ Reply) at 24–25.  That reality largely forecloses Plaintiffs' argument here, as it is well

established that Rule 59(e) "may not be used to relitigate old matters."  Exxon Shipping Co., 554

U.S. at 485 n.5 (quoting 11 C. Wright & A. Miller, Fed. Prac. & Proc. § 2810.1, pp. 127–28 (2d

ed. 1995)); see also Slate, 12 F. Supp. 3d at 34 (explaining that "litigants may not use Rule 59(e) either to repeat unsuccessful arguments or to assert new but previously available arguments"). The Court will nonetheless briefly explain further why Plaintiffs' Second Amended Complaint failed to adequately plead the CPPA claim.

In order to state a claim upon which relief may be granted, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Plaintiffs' Second Amended Complaint — the operative complaint here — does absolutely nothing to put Defendants on notice of any claim under the CPPA, not least because the pleading contains no mention of the CPPA at all. Indeed, not only does that Complaint omit any CPPA count in its lengthy list of common-law causes of action, see SAC, ¶¶ 92–135, but the pleading also contains no discussion whatsoever of the elements required to state a claim under the CPPA or any hint as to which of the Act's myriad provisions Defendants allegedly violated. A plaintiff cannot suddenly "discover" in summary-judgment briefing that a collection of facts pled in a complaint impliedly invokes a previously unmentioned statutory claim — especially when, as here, that Complaint explicitly states numerous other substantive counts. By never even gesturing at a count under the CPPA, while expressly pleading multiple claims sounding in contract and tort, the Second Amended Complaint did not give Defendants "fair notice of the claim[s] being asserted" so as to permit them "the opportunity to file a responsive answer" and "prepare an adequate defense." Jiggetts v. District of Columbia, 319 F.R.D. 408, 417 (D.D.C. 2017) (quoting Brown v. Califano, 75 F.R.D. 497, 498 (D.D.C. 1977)); see also Poblete v. Indymac Bank, 657 F. Supp. 2d 86, 96 (D.D.C. 2009) ("The court or opposing party must be able to understand whether a valid claim is alleged and if so what it is.") (internal quotation marks and citation omitted).

Arguing to the contrary, Plaintiffs rely on the Supreme Court's *per curiam* decision in Johnson v. City of Shelby, 574 U.S. 10 (2014).  There, the Court summarily reversed a lower court that had dismissed the plaintiffs' case against a municipality for failing to expressly cite 42 U.S.C. § 1983 in their complaint, even though the complaint clearly recounted the events that allegedly "entitled them to damages from the city" for violations of the Fourteenth Amendment. Id. at 10–12.  But in Johnson, the defendant municipality no doubt had fair notice that section 1983 served as the plaintiffs' cause of action, as it is well established that such provision provides the statutory hook by which litigants may obtain monetary relief against municipalities acting in violation of constitutional law.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  Indeed, the municipality even explained in its Answer that it "cannot be held liable for damages pursuant to 42 U.S.C. § 1983."  See Petition for Writ of Certiorari at 10, Johnson, 574 U.S. 10 (No. 13-1318) (emphasis added) (citation omitted).

Here, by contrast, Defendants had no notice that Plaintiffs sought to raise — in addition to their existing breach-of-contract, fiduciary-duty, and tort counts — yet another claim of substantive liability under the CPPA until Plaintiffs first invoked the statute in their brief in opposition to summary judgment.  Far from imposing a "mere pleading formality," Johnson, 574 U.S. at 11 (citation omitted), requiring Plaintiffs more clearly to bring the CPPA count to Defendants' attention was particularly necessary where Plaintiffs pleaded various additional, independent claims for relief.  See Taylor v. Mills, 892 F. Supp. 2d 124, 137–38 (D.D.C. 2012) (rejecting hostile-work-environment claim as improperly pleaded when first raised in plaintiff's opposition to summary-judgment motion, where complaint's sole claim was for retaliation).

Plaintiffs nevertheless argue that various excerpts from their Second Amended Complaint effectively "demonstrate a violation of the CPPA."  Pl. Mot. at 7 (citing SAC, ¶¶ 9, 10, 58, 59).

And they further insist that "[u]nfair and deceptive trade practices ha[ve] been the gravamen of the Plaintiffs' case from the very start." Pl. Reply at 2. Yet allegations of misleading or deceptive statements in the insurance policy and accompanying marketing materials, see id., just as easily support the breach-of-contract, fiduciary-duty, and tort claims Plaintiffs did plainly plead. Neither the cited paragraphs nor the Complaint as a whole demonstrates any intention on their part to state a separate claim under the CPPA, nor do they "give [Defendants] fair notice" of such a claim. Twombly, 550 U.S. at 555 (citation omitted); see also Jordan v. Dist. of Columbia, 161 F. Supp. 3d 45, 61 (D.D.C. 2016) (rejecting constitutional claim raised in summary-judgment brief as improperly pled where invocation of relevant constitutional right "is nowhere to be found in Plaintiffs' complaint," even when complaint arguably alleged factual basis for additional claim). At bottom, even when the Second Amended Complaint is liberally construed, Plaintiffs have not shown that the Court committed any error, let alone a "clear error" sufficient to warrant relief under Rule 59(e), in rejecting their CPPA count as not properly pled. Firestone, 76 F.3d at 1208 (citation omitted).

Perhaps recognizing the infirmity of their position, Plaintiffs next argue that even if the Second Amended Complaint contained no CPPA count, they "explicitly sought leave to amend" in a footnote lodged within the penultimate page of their summary-judgment reply. See Pl. Reply at 3 & n.1 (citing Pl. MSJ Reply at 24 n.11). As the D.C. Circuit has often reiterated, however, "a request for leave to amend must be submitted in the form of a written motion." Trudel v. SunTrust Bank, 924 F.3d 1281, 1287 (D.C. Cir. 2019) (quoting Benoit v. U.S. Dep't of Agric., 608 F.3d 17, 21 (D.C. Cir. 2010)). There is no dispute that Plaintiffs never submitted such a motion prior to judgment in this case. This Court, moreover, has already explained that "a plaintiff cannot amend his Complaint in an opposition to . . . summary judgment." Dun, 2020

9

WL 1065554, at *9 (quoting <u>Jo v. Dist. of Columbia</u>, 582 F. Supp. 2d 51, 64 (D.D.C. 2008)).  No "manifest injustice" obtains from this Court's refusing to abide Plaintiffs' attempted circumvention of proper procedures.

Finally, Plaintiffs argue that even if their prior Complaint did not contain a CPPA claim from the outset, and even if they neglected to seek proper leave to amend, refusing to vacate the judgment would be manifestly unjust all the same.  That is so, Plaintiffs contend, because the "unusual circumstances" of this case "deprived [them] of the opportunity to amend that they almost always would have had in other circumstances."  Pl. Reply at 3.  But there is nothing "unusual" in these proceedings that prevented Plaintiffs from timely seeking leave to amend their Complaint with their desired CPPA count prior to judgment.  Indeed, they offer no good reason for their failure to do so.

In June 2017, Plaintiffs filed their First Amended Complaint alleging that Dun purchased her insurance from a trust governed by D.C. law.  <u>See</u> ECF No. 21, ¶¶ 1, 28e.  No CPPA count appeared there or in a Second Amended Complaint filed two months later.  Over a year later, at the request of Plaintiffs — who themselves emphasized the relevance of D.C. law to this dispute, <u>see</u> Mot. to Transfer at 4–5, 9–10 — the Montana court transferred the action to this Court.  Shortly after this Court assumed jurisdiction, Defendants obtained leave to file an Amended Answer in February 2019, but Plaintiffs stood pat.  At no point in the ensuing year did they seek to add a CPPA claim, even after this Court scheduled summary-judgment briefing on July 24, 2019.

That inaction is problematic for Plaintiffs.  Recall that there is no "manifest injustice" under Rule 59(e) where a party could have "easily avoided" a given outcome but instead "elected not to act until after a final order had been entered."  <u>Ciralsky</u>, 355 F.3d at 673; <u>see also</u> <u>Exxon</u>

Shipping Co., 554 U.S. at 485 n.5 (explaining that Rule 59(e) may not be used to "raise arguments or present evidence that could have been raised prior to the entry of judgment") (citation omitted).  Here, Plaintiffs make no argument that they lacked the facts necessary to plead a CPPA claim prior to judgment.  On the contrary, they concede that "from the very first day of this litigation," the case has revolved around allegedly deceptive and "misleading communications to customers."  Pl. Mot. at 12; see also Foster, 159 F. Supp. 3d at 14 (denying Rule 59(e) motion when there was "no reason why either of Plaintiff's current positions was unavailable to her before judgment"); Odhiambo v. Republic of Kenya, 947 F. Supp. 2d 30, 40 (D.D.C. 2013) (denying Rule 59(e) motion because "it is not manifestly unjust to deny [the plaintiff] the chance to re-open the case to assert new claims that he could have brought at the outset").

Plaintiffs ultimately have no one but themselves to blame for their consistent failure to seek leave to add a CPPA claim and their present straits that such claim has not been "heard on the merits."  Pl. Reply at 2.  Indeed, they seem to admit as much, conceding that "[i]n hind-sight, [they] might have been better served to file a separate motion to amend the complaint while the motion for summary judgment was pending."  ECF No. 113 (Motion to Amend) at 4.  In a brief attempt to absolve themselves of fault, Plaintiffs point to Defendants' efforts to dismiss the action in Montana for lack of jurisdiction and in this Court for lack of standing as evidence that Defendants "have entirely avoided litigating the merits of the case."  Pl. Reply at 2.  But Defendants' motion for summary judgment rested nearly in whole on the merits Plaintiffs accuse them of avoiding — i.e., the plain meaning of the Insurance Certificate and whether the accompanying marketing materials were deceptive.  See ECF No. 97-1 at 12–24.  At any rate, it is left unsaid how Defendants' litigating choices prevented Plaintiffs from seeking leave to

11

amend their Complaint to include a claim based on allegations that Plaintiffs themselves acknowledge have existed "since the very start of this case."  Pl. Reply at 2.

Plaintiffs seem to suggest that they will experience a "grave injustice" if their CPPA claim is judged under the "higher threshold of Rule 59(e)," as opposed to Rule 15(a)'s more generous standard.  Id. at 4.  But "self-inflicted prejudice does not qualify as manifest injustice" under Rule 59(e).  Mohammadi, 947 F. Supp. 2d at 81.  After all, the only alleged injustice here is the unremarkable consequence of Plaintiffs' neglecting to seek leave to amend their Complaint when — by their own admission — they plainly could have.  Because Rule 59(e) does not provide "a chance for [Plaintiffs] to correct poor strategic choices," their arguments do not warrant vacatur of the final judgment.  See SEC v. Bilzerian, 729 F. Supp. 2d 9, 15 (D.D.C. 2010).

B.  Motion for Leave to Amend

As previously noted, "Leave to amend a complaint after judgment may be granted only after the Court vacates that judgment."  Foster, 159 F. Supp. 3d at 16.  Because Plaintiffs do not prevail in their effort to vacate the judgment, their Motion to Amend is denied as moot. Mohammadi v. Islamic Republic of Iran, 782 F.3d 9, 18 (D.C. Cir. 2015) ("Since the court declined to set aside the judgment under Rule 59(e), it properly concluded that [plaintiffs'] motion to amend under Rule 15(a) was moot.") (alteration in original) (quoting Ciralsky, 355 F.3d at 673); Foster, 159 F. Supp. 3d at 16 ("Because [the plaintiff] has advanced no meritorious ground for vacating the judgment, the Court cannot grant her request to amend."); ACE Am. Ins. Co. v. Fed. Crop Ins. Corp., No. 14-1992, 2017 WL 6209174, at *3 (D.D.C. June 7, 2017) (similar); People for Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric., 60 F. Supp. 3d 14, 21 (D.D.C. 2014) (similar); Western Wood Preservers Inst. v. McHugh, 292 F.R.D. 145, 147

(D.D.C. 2013) (similar).

In any event, Plaintiffs fail even to satisfy the Rule 15(a) standard for amending their Complaint.  In deciding whether to grant such leave, a court may consider, *inter alia*, "undue delay," "undue prejudice to the opposing party by virtue of allowance of the amendment," or "futility of amendment."  Foman v. Davis, 371 U.S. 178, 182 (1962).  It is clear that "undue delay is a sufficient reason for denying leave to amend."  Atchison v. Dist. of Columbia, 73 F.3d 418, 426 (D.C. Cir. 1996).  As previously explained, see *supra* at 10–12, Plaintiffs offer no compelling reason for their protracted, more-than-two-year delay in requesting leave to amend, and they certainly cannot attribute it to Defendants.  See Heller v. Dist. of Columbia, 290 F.R.D. 1, 4 (D.D.C. 2013) (denying motion for leave to amend where plaintiffs offered "no justification for their tardiness").  In addition, allowing Plaintiffs to begin proceedings anew — that is, "to go back to the drawing board" after discovery and a summary-judgment ruling — "would be highly prejudicial to [Defendants]."  Trudel, 924 F.3d at 1288 (quoting Trudel, 325 F.R.D. at 28).  That is especially so where full merits discovery would need to take place, as even Plaintiffs concede. See Pl. Reply at 10 ("the Parties have done only preliminary discovery"); see also Bode & Grenier, LLP v. Knight, 808 F.3d 852, 860–61 (D.C. Cir. 2015) (affirming denial of leave to amend after summary-judgment ruling where movant offered no justification for delay and new discovery would be required); Williamsburg Wax Museum, Inc. v. Historic Figures, Inc., 810 F.2d 243, 247 (D.C. Cir. 1987) (similar).

Finally, although the Court "need not consider" the futility of amendment, given the "potential for prejudice" and "substantial delay," Atchison, 73 F.3d at 427, it bears noting that the merits of Plaintiffs' proposed claim are uncertain at best.  While the CPPA generally prohibits unfair or deceptive trade practices and assertions of material facts misleading to a

13

reasonable consumer, <u>see</u> D.C. Code § 28-3904, this Court has already explained that Defendants' Insurance Certificate and marketing materials were unambiguous and non-misleading.  <u>Dun</u>, 2020 WL 1065554, at *7–8; <u>see also</u> <u>id.</u> at *8 ("Far from being 'deceptive' or introducing ambiguity, as Plaintiffs would suggest, the marketing materials served to further clarify the terms of the policy."); <u>Whiting v. AARP</u>, 637 F.3d 355, 364 (D.C. Cir. 2011) (affirming rejection of breach-of-contract claim and subsequent dismissal of CPPA claim because "no reasonable person" could be misled or deceived by statements in an insurance certificate and promotional materials).  And it is by no means a foregone conclusion that the CPPA even applies in this case.  While the Trust is no doubt governed by D.C. law, Plaintiffs do not dispute that the relevant marketing materials were created and distributed by an Iowa-domiciled insurer to a Montana resident.  <u>See</u> <u>Shaw v. Marriott Int'l, Inc.</u>, 605 F.3d 1039, 1045 (D.C. Cir. 2010) (performing choice-of-law analysis and concluding that CPPA did not govern dispute between two non-D.C. domiciliaries, even though District had "some interest" in dispute).

## IV.  Conclusion

For the foregoing reasons, the Court will deny Plaintiffs' Motion to Vacate the Judgment and for Leave to File a Third Amended Complaint.  A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  July 15, 2020